IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CHRISTOPHER LOUIS WAINE,

02:12-cv-01613-SU

Plaintiff,

FINDINGS AND RECOMMENDATION

v.

STATE OF OREGON DEPARTMENT
OF HUMAN SERVICES CHILDREN,
ADULTS AND FAMILIES DIVISION
and ITS AGENTS,

Defendants.

———————————————————

SULLIVAN, Magistrate Judge:

*Pending Motions*

Christopher L. Waine ("Waine"), appearing *pro se*, filed a Complaint against the State of

Oregon's Department of Human Services and "its agents"[1] (collectively "DHS"), pursuant to 42

———————————————

[1]It does not appear Waine served any individuals in this case, nor does Waine allege he
was unable to ascertain the identity of the "agent" defendants.  Furthermore, in his Complaint,
Waine alleges DHS violated the enumerated rights.  As such, the only parties before the court for

1 – FINDINGS AND RECOMMENDATION

U.S.C. § 1983 and state law, alleging violations of the Fifth, Ninth and Fourteenth Amendments of the Constitution, OR. REV. STAT. § 418.010, and enumerated DHS Rules.  Waine's claims arise from DHS's investigation of accusations against Waine of child abuse that resulted in a no contact order.  (Compl. 1, 7.)  Specifically, in Count I of his Complaint, Waine alleges DHS deprived him of his liberty without due process, in violation of his Fifth Amendment right, when DHS "held [him] to answer for sexual abuse/exploitation without indictment of a Grand Jury. . . ."  (Compl. 7.)  In Count II, Waine alleges DHS violated his Ninth Amendment right "to a presumption of innocence until proven guilty or his right to raise his children."  (Compl. 7.)  Waine alleges in Count III that DHS's application of its "Rules" deprived him of his "liberties without due process" in violation of his Fourteenth Amendment right.  (Compl. 8.)  Waine also alleges an "OREGON REVISED STATUTE VIOLATION" charging that DHS violated OR. REV. STAT. § 418.005, when it took his children over his objections.  (Compl. 8-9.)  Finally, Waine contends "DHS [] violated Rules I-A.6.1 throughout their investigation of allegations against [] Waine."  (Compl. 9.)  Waine seeks monetary and equitable relief for the alleged violations.

DHS moves to dismiss Waine's Complaint in its entirety, with prejudice.[2]  Specifically, DHS seeks a dismissal of all claims against it pursuant to Rule 12(b) of the Federal Rules of Civil Procedure on the grounds: (1) Waine's claims are barred by the Eleventh Amendment and, alternatively; (2) DHS, *i.e.*, State of Oregon, is not a "person within the meaning of § 1983 and,

---

purposes of the pending motion are Waine and DHS.

[2]Although Waine requested oral argument on DHS's Motion to Dismiss, the court finds oral argument is not necessary to the resolution of the pending motion.  *See* L.R. 7-1(d)(1).

therefore, not subject to suit under that statute. (Defs.' Mot. Dismiss 1-2.)[3] For the reasons set forth below, DHS's Motion to Dismiss should be granted.

*Factual Background*

For purposes of this motion, the allegations in Waine's Complaint are accepted as true and viewed in a light most favorable to him.

On May 29, 2009, the Oregon Department of Human Services, Children, Adults and Families Division, Umatilla County branch, began investigating a report that Waine sexually abused his daughters, who were then six and eight years old. (Compl. 3; Ex. 1.)  Waine alleges that at the onset of DHS's investigation of his alleged sexual abuse, a DHS case worker, Darla Warner, described the details of the alleged abuse to him.  (Compl. 3; Ex. 3.)  According to Waine, as part of a "protective action plan," Warner directed Nicole McClelland, the children's mother, not to allow the girls contact with Waine until otherwise notified. (Compl. 3; Ex. 1 at 5.)  Additionally, Warner relayed her findings to local law enforcement and in her report stated Waine "is not allowed contact until the completion of the criminal investigation, pending the findings." (Compl. 3; Ex. 1 at 6.)

Waine alleges his lawyer, James Halley, received a letter from Warner, dated August 26, 2009, in which she notified Waine of DHS's conclusion that his daughters' report of abuse/exploitation by him was "founded." (Compl. 3; Ex. 4.)  According to Waine, "Warner neglected to inform" him or his attorney "that she reported the sexual abuse . . . to law enforcement, nor did she send a letter detailing the progress of the criminal investigation." (Compl. 3.)  Rather,

---

[3]In its Motion to Dismiss, DHS expressly states it preserves all other available defenses, including but not limited to insufficient process, insufficient service of process, Oregon Tort Claims Act provisions, applicable statutes of limitation/repose, issue/claim preclusion, and other applicable immunities. (Def.'s Mot. Dismiss 2.)

3 – FINDINGS AND RECOMMENDATION

Waine alleges he learned of the criminal investigation when DHS released its assessment of the allegations on March 6, 2012, despite Halley's request for a copy of the assessment over two years earlier, on September 14, 2009.[4]  (Compl. 3; Exs. 5, 6.)

Waine alleges that, on October 26, 2011, he sent a letter to DHS demanding the agency release all information regarding the charges against him.  (Compl. 4; Ex. 13 at 2.)  Additionally, Waine retained Casey C. Robertson as new counsel.  Robertson, sent a letter, dated November 21, 2011, demanding a copy of the case against Waine, and attaching a copy of Waine's October 26 letter.  (Compl. 4; Ex. 13 at 1.)  On January 5, 2012, Joyce L. Turner, Child Welfare Program Manager with DHS's Umatilla branch office, sent copies of assessment summaries regarding the Waine family.  (Compl.4; Ex. 14.)  However, the narrative reports of the sexual abuse allegations against Waine had been redacted.  (Compl. 4; Ex. 14.)  Waine alleges that at the same time "it was

_____

[4]In his Complaint, Waine alleges repeated inaction by DHS in responding to requests by Halley for information about the allegations against Waine and efforts by Halley to appeal the "founded" assessment:

On September 2, 2009, Halley sent a letter appealing the agency's decision and DHS did not respond.  (Compl. 3; Ex. 7.)

On November 3, 2009, Halley sent a letter demanding disclosure of the nature of the allegations.  (Compl. 3; Ex. 8.)

On December 11, 2009, Oregon DHS sent a letter denying Waine's appeal, but they did not release any further information at that time.  (Compl. 3; Ex. 9.)

On December 15, 2009, Halley sent a letter requesting a central office review of the appeal denial.  (Compl. 3; Ex. 10.)

On July 6, 2010, DHS responded and again asserted the allegations were "founded." (Compl. 4; Ex. 11.)

On July 30, 2010, Halley sent a letter requesting central office review of the appeal denial and DHS did not respond.  (Compl. 4; Ex. 12.)

4 – FINDINGS AND RECOMMENDATION

discovered . . . the assessments released contained assessments from Oregon DHS regarding the children's mother . . . Nicole McClelland, for Mental Injury, Threat of Harm in March 2006, Sexual Abuse and Exploitation in February 2006 . . . marked as 'founded.'" (Compl. 4; Ex. 2.)

On January 23, 2012, Waine sent an email to Naomi Steenson, the Governors Advocate and Children Ombudsmen with the Oregon Governor's Advocacy Office, requesting a formal meeting regarding his case. (Compl. 4; Ex. 15.) According to Waine, in response, Steenson called Waine and advised him he could request documents related to his case from Bobbi Doan, Department of Human Services Public Records Request officer, and Steenson provided Waine Doan's contact information. (Compl. 4.) On February 2, 2012, Waine emailed Doan requesting documents regarding the investigation against him. (Compl. 4; Ex. 16.) Waine alleges DHS did not respond.

Waine next alleges that in mid-February 2012, he called Joni Goodwin, Ombudsman with the Governor's Advocacy and Children's Ombudsman Office. According to Waine, he and Goodwin "discussed his case and . . . Goodwin told . . . Waine . . . the Governor's Advocacy Office would investigate." (Compl. 5.) Waine further alleges that on February 21, 2012, Goodwin sent an email informing him of the progress of her investigation. (Compl. 5; Ex. 17.) Specifically, Goodwin reported she contacted the Umatilla branch of DHS and stated:

> In your case you did receive the Dispo letter however when you requested a review of the FOUNDED Dispo it appears that the review was not completed. The branch has indicated to me that the founded Dispo letter gives clear direction regarding who clients should submit their request for a review to. The branch has also indicated to me that the request for a review was not sent to the person which was listed on the original Dispo letter. I have asked the branch for a copy of the original Dispo letter from DRS to you and the letter from your attorney which requested the review.

(Compl. 5; Ex. 17.)

5 – FINDINGS AND RECOMMENDATION

Waine charges the first Disposition letter sent by DHS's Umatilla branch informing him the sexual abuse report against him was "founded" did not contain information on how to appeal the decision.  (Compl. 5; Ex. 4.)  Waine acknowledges, however, that subsequent letters from the Umatilla branch DHS do identify Turner as the person to whom an appeal should be made.  (Compl. 5; Exs. 9, 11.)  Accordingly, Waine's letters to the Umatilla branch DHS thereafter were addressed to Turner.  (Compl. 5; Exs. 10, 12, 13.)

On March 6, 2012, Turner faxed a copy of the assessment summary of the alleged sexual abuse incident to attorney Robertson.  (Compl. 5; Ex. 18.)  On March 9, 2012, Goodwin emailed Waine to report the Governor's Advocacy Office investigation was complete and she included a time line of events and her  analysis.  (Compl. 5; Ex. 19.)  Goodwin concluded that the founded disposition letter from the Oregon DHS, dated July 6, 2010, was sent by mistake because a new employee at the office did not correctly verify an original disposition letter had already been sent to Waine.  (Compl. 5-6; Ex. 19 at 4.)  Goodwin also noted the language used to describe the alleged incident of sexual abuse in each of the disposition letters "appears to vary."  (Compl. 6; Ex. 19 at 5.)  Goodwin also wrote:

> The DHS branch office was unable to provide GAO documentation showing that the request for a Central Office Review of the FOUNDED Disposition was sent to Salem.  Therefore DHS District 12 Child Welfare Program Manager, Joyce Turner, spoke with personnel within the Central Office FOUNDED Disposition Review Committee and requested that a review be completed now.

(Compl. 6; Ex. 19 at 5.)

Waine alleges that on March 14, 2012, he sent a letter to Turner notifying of his intent to sue DHS.  (Compl. 6; Ex. 20.)  In response, Turner sent a letter, dated March 20, 2012, informing Waine the Central Office Review Committee had granted him a review of his case.  (Compl. 6; Ex. 21.)

6 – FINDINGS AND RECOMMENDATION

On April 21, 2012, following instruction from the Governor's Advocacy Office, Waine sent a letter to DHS formally requesting a Central Office Review of the sexual abuse allegations. (Compl. 6; Ex. 22.)  Waine alleges he "enclosed evidence to assist the review committee, including an audio recording of a conversations between . . . Waine and . . . Warner . . . and testimony from himself, his mother, his father, his brother and an additional character witness, [] Trisha Holcomb, an investigator for Child Protective Services in the State of Washington." (Compl. 6; Ex. 23.)  On June 20, 2012, DHS Central Review Committee in Salem, Oregon sent a letter regarding the Review Committee's decision to change DHS Umatilla branch office's assessment from "founded" to "unable to be determined." (Compl. 6; Ex. 24.)

Waine alleges that on July 25, 2012, he filed, electronically, the "Oregon Standard Tort Claim Form." (Compl. 6; Ex. 25.)  Mike Baker, Claims Management Consultant for the State of Oregon Risk Management Department, emailed Waine the claim number L149363-0l. (Compl. 6-7; Ex. 26.)  Waine filed his Complaint in this court on September 7, 2012.  He alleges that, to date, he has not received copies of "DHS and Mt. Emily recorded interviews with his children." (Compl. 7.)  Additionally, Waine charges that throughout the investigation, he did not see his children, nor could he discover their whereabouts after McClelland moved with the girls, but he continues to provide child support payments.  (Compl. 7.)

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(2011).  A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 566 U.S. at 678).

In cases involving a plaintiff proceeding *pro se*, the court construes the pleadings liberally and affords plaintiff the benefits of any doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) ("[F]ederal courts liberally to construe the 'inartful pleadings' of pro se litigants."). In other words, courts hold *pro se* pleadings to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Karim-Panahi*, 839 F.2d at 623-624.

*Discussion*

I.   Motion to Dismiss

DHS moves to dismiss Waine's Complaint for failure to state a claim under Rule 12(b) of the Federal Rules of Civil Procedure. Specifically, DHS argues it is entitled to dismissal, with prejudice, because it enjoys Eleventh Amendment immunity from suit in this court. Alternatively,

DHS seeks an order dismissing all of plaintiff's § 1983 claims because DHS, *i.e.*, State of Oregon, is not a "person" within the meaning of §1983.  (Def.'s Mot. Dismiss 2.)

    *A.  Eleventh Amendment Immunity*

    The Eleventh Amendment provides the judicial power of the United States shall not extend to any suit in law or equity commenced or prosecuted against a state.  U.S. Const. amend. XI.  In *Will v. Michigan Department of State Police*, the Supreme Court held the Eleventh Amendment bars section 1983 suits against a state and its employees in their official capacities.  491 U.S. 58, 64-66 (1989) (state officials sued in their official capacities are not "persons" subject to civil rights suits under 42 U.S.C. § 1983); *see also Regents of the University of California v. Doe*, 519 U.S. 425, 431 (1997) (explaining Eleventh Amendment immunity extends to state and state agencies); *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007) (explaining Eleventh Amendment immunity extends to state officials in their official capacity).  Thus, the Eleventh Amendment provides states, including state agencies such as DHS, with immunity from suit in federal court, and bars citizens from bringing suit in federal court against a state or state agency or state actor.  *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("an unconsenting State is immune from suits brought in federal courts by her own citizens").

    There are only three exceptions to this general rule. First, a state may waive its Eleventh Amendment defense.  *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 670 (1999) (citing *Clark v. Barnard*, 108 U.S. 436, 447–48 (1883)).  Second, Congress may abrogate the states' sovereign immunity by acting pursuant to a grant of constitutional authority.  *Kimel v. Florida Board of Regents*, 528 U.S. 62, 80 (2000).  Third, under the *Ex Parte Young* doctrine, the Eleventh Amendment does not bar a "suit against a state official when that suit

seeks . . . prospective injunctive relief." *Seminole Tribe of Florida. v. Florida*, 517 U.S. 44, 73 (1996) (citing *Ex Parte: Edward T. Young*, 209 U.S. 123 (1908)).

As mentioned above, Waine's Complaint alleges violations pursuant to 42 U.S.C. § 1983, OR. REV. STAT. § 418.010, and enumerated DHS Rules. Waine's claims arise from DHS's handling of abuse allegations against him. In his "Request for Relief," Waine seeks, among other things, $1.7 million in damages. Congress has not abrogated defendant's Eleventh Amendment immunity for these types of claims; nor has DHS waived its Eleventh Amendment immunity for Waine's claims here. Thus, pursuant to the Eleventh Amendment, DHS is immune from Waine's suit here seeking monetary relief for claims under state and federal law.

In addition to monetary relief, however, Waine seeks equitable relief. Specifically, he demands the DHS Central Review Committee rewrite the Central Review letter and change the decision to "unfounded" and omit the language:

> While there is significant concern about the excessive physical discipline and the general nurturing and care of the children when you are parenting, there are too many inconsistencies and a lack of contextual information to support the many incidents of sexual abuse reported by the girls.

(Compl. 13.) Consequently, the court must consider whether the third exception to Eleventh Amendment immunity, set forth in *Ex Parte Young*, applies here.

In *Ex Parte Young*, the Supreme Court concluded the Eleventh Amendment did not bar a suit for equitable relief against a state official whose actions were taken under the authority of an unconstitutional state enactment. 209 U.S. at 159-60. The Supreme Court made it clear that a suit against a state official seeking injunctive relief from unconstitutional state action is not a suit against the state, regardless of whether the state is the real party in interest. While the Court has since ruled the *Ex parte Young* exception permits only suits for prospective injunctive relief, *see Edelman*, 415

U.S. at 677, the *Ex parte Young* principle, as so limited, has repeatedly been reaffirmed. *See, e.g.,* *id*. at 664; *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

Waine's action for equitable relief against DHS does not fall within the *Ex parte Young* exception. Specifically, Waine does not allege state officials are continuing to violate federal law, nor does he challenge either an Oregon statue or administrative rule as unconstitutional. Rather, by his request for equitable relief, Waine asks this court to conclude DHS improperly administered its own regulations and, additionally, violated OR. REV. STAT. § 418.010. As an equitable remedy, Waine requests the federal court to undo DHS's determination of "founded." This is not the prospective injunctive relief contemplated by the exception to Eleventh Amendment immunity set forth in *Ex Parte Young*. Indeed this court's interference with DHS's application of its administrative rules, and its interpretation of and adherence to Oregon statutes, would violate the Eleventh Amendment. *See Papasan v. Allain*, 478 U.S. 265, 277 (1986) (*Ex Parte Young* "does not foreclose an Eleventh amendment challenge where the official action is asserted to be illegal as a matter of state law alone"); *see also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

In sum, the Eleventh Amendment bars all of Waine's claims against DHS seeking monetary and equitable relief. Accordingly, DHS's Motion to Dismiss Waine's claims under section 1983 and state law should be granted.[5]

---

[5]Because the court has determined DHS is immune from suit for the claims set forth in Waine's Complaint pursuant to the Eleventh Amendment, it need not reach DHS's other contention regarding dismissal of Waine's claims under 42 U.S.C. § 1983, *i.e.*, DHS is not a "person" for purposes of § 1983.

11 – FINDINGS AND RECOMMENDATION

*Recommendation*

Based upon the foregoing, DHS's Motion to Dismiss (doc. #4) should be GRANTED, and Waine's Complaint (doc. #1) should be DISMISSED in its entirety, with prejudice.  All remaining motions should be DENIED as moot.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due **January 22, 2013**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 3rd day of January 2013.


 /s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge

12 – FINDINGS AND RECOMMENDATION