IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER LOUIS WAINE,

        Plaintiff,

v.

DARLA WARNER, JOYCE TURNER,
DEENA LOUGHARY, JYL HOBBS, JODI
FROST, and BONNIE HINTON,

        Defendants.

02:12-CV-01613-BR

OPINION AND ORDER

CHRISTOPHER LOUIS WAINE,
220 Heather Drive
Stanfield, OR 97875
(541) 341-5309

        Plaintiff, *Pro Se*

**ELLEN F. ROSENBLUM**
Attorney General
**HEATHER J. VAN METER**
Senior Assistant Attorney General
Oregon Department of Justice
1162 Court Street N.E.
Salem, OR 97301

        Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion (#25) to Dismiss. For the reasons that follow, the Court **GRANTS** Defendants' Motion.

## BACKGROUND

The following facts are taken from Plaintiff's First Amended Complaint and documents attached thereto.

On May 29, 2009, the Oregon Department of Human Services (DHS), Children, Adults and Families Division, Umatilla County branch, began investigating a report that Plaintiff Christopher Louis Waine sexually abused his daughters, who were then six and eight years old. At the outset of the DHS investigation of Plaintiff's alleged sexual abuse, Defendant Darla Warner, a DHS case worker, described the details of the alleged abuse to Plaintiff. Warner's Assessment Summary reflects as part of a "protective action plan" that the children's mother, Nicole McClelland, agreed on May 29, 2009, not to allow the children to have contact with Plaintiff until otherwise notified. Warner's Assessment Summary also reflects Warner advised Plaintiff on May 29, 2009, that DHS "could not allow" Plaintiff to have contact with his children "until the completion of the criminal investigation, pending the findings." Am. Compl., Ex. 1 at 6.

Warner's Assessment Summary reflects an interview of the

2 - OPINION AND ORDER

children was conducted on June 8, 2009, at which time the children made "detailed disclosures." Consequently, Warner filled out a police report and forwarded the interview documentation to the District Attorney's Office.

On August 26, 2009, Warner advised Plaintiff's counsel, James F. Halley, via letter that DHS had finished its assessment and concluded the abuse/exploitation reported by Waine's daughters was "founded" and that Plaintiff had the right to appeal the outcome. Am. Compl., Ex. 4. Plaintiff alleges "Warner neglected to inform" Plaintiff or his attorney "that she reported the alleged sexual abuse to law enforcement." Am. Compl. at ¶ 2. Plaintiff also alleges Warner did not "send a letter detailing the progress of the criminal investigation." Am. Compl. at ¶ 2.

Plaintiff alleges Halley sent several requests for review to Warner, to Defendant Jodi Frost, and to Defendant Deena Loughary in September and November 2009.

On December 11, 2009, Defendant Bonnie Hinton, DHS Child Welfare Supervisor, sent Halley a letter advising him that the DHS Local Child Welfare Office Committee had conducted a review of Warner's assessment and concluded "there is reasonable cause to believe that [Plaintiff] is responsible for the Threat of Harm/Sex Abuse/Exploitation of [Plaintiff's daughters]." Am. Compl., Ex. 9. Hinton also advised Halley that Plaintiff could

3 - OPINION AND ORDER

seek review of the decision from the Central Review Committee and informed Halley about the process for obtaining that review. Specifically, Hinton noted Plaintiff should direct his request to DHS Child Welfare Program Manager Defendant Joyce Turner.

On December 15, 2009, Halley sent Turner a letter seeking review of the DHS "founded" decision from the Central Review Committee.

On July 6, 2010, Defendant Jyl Hobbs, DHS Child Welfare Supervisor, accidentally sent Halley a second letter advising him that DHS had concluded the allegations against Plaintiff were "founded" and informing him about the process for obtaining a review of its decision. Am. Compl., Ex. 11.

On July 30, 2010, Halley sent a letter to Turner requesting review of the DHS decision and asking her to disclose the authority under which DHS was conducting the investigation. Turner did not respond.

On November 21, 2011, Plaintiff's new counsel, Casey Robertson, sent a letter to DHS requesting the agency to provide copies of the "investigatory files on [Plaintiff] and his children." Am. Compl., Ex. 13.

On January 5, 2012, Turner, sent copies to Robertson of the assessment summaries relating to the Waine family. The copies, however, included narrative reports of the sexual-abuse allegations against Plaintiff that had been redacted.

4 - OPINION AND ORDER

On January 23, 2012, Plaintiff sent an email to Naomi Steenson, the Governors Advocate and Children Ombudsmen with the Oregon Governor's Advocacy Office, and requested a formal meeting regarding his case. Plaintiff alleges Steenson called Plaintiff; advised him that he could request documents related to his case from Bobbi Doan, Department of Human Services Public Records Request officer; and provided Plaintiff with Doan's contact information.

On February 2, 2012, Plaintiff emailed Doan and requested documents related to the investigation against him. Plaintiff alleges Doan did not respond.

Plaintiff alleges he called Joni Goodwin, Ombudsman with the Governor's Advocacy and Children's Ombudsman Office, in mid-February 2012. Plaintiff alleges they discussed his case and Goodwin told Plaintiff that the Governor's Advocacy Office would investigate Plaintiff's case.

On March 6, 2012, Turner faxed a copy of the assessment summary of the alleged sexual-abuse incident to Robertson. Plaintiff alleges he learned about the criminal investigation for the first time on March 6, 2012, when DHS "released its assessment of the allegations."

On March 9, 2012, Goodwin emailed Plaintiff to report the Governor's Advocacy Office investigation was ongoing and to provide a timeline of the investigation to date.

5 - OPINION AND ORDER


On March 14, 2012, Plaintiff sent to Turner a Letter of Intent to Sue on the ground that Plaintiff had "not been afforded the opportunity" to appeal the DHS investigation decision.

On March 20, 2012, Turner sent Plaintiff a letter noting DHS found

> notice had been sent to you regarding the local branch committee's decision to uphold the original CPS founded disposition. However, due to the apparent confusion that exists as to whether or not you actually received this notice, I contacted our Central Office to request that they conduct a review of the CPS founded disposition. They have agreed to conduct a review.

Am. Compl., Ex. 21.

On June 20, 2012, Child Protective Services (CPS) Consultant Pam Hurley sent Plaintiff a letter advising him that the Central Office had conducted a review of the founded decision and that the decision was changed to "Unable to Determine." Am. Compl., Ex. 24.

On September 7, 2012, Plaintiff, appearing *pro se*, filed an action in this Court pursuant to § 1983 against DHS and "its agents" in which he alleged DHS[1] violated Plaintiff's rights under the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution and under state law. Plaintiff sought damages.

---

[1] The State of Oregon Department of Human Services, Children and Adult Services Division, was the only party that Plaintiff served with his Complaint.

6 - OPINION AND ORDER

On January 1, 2013, Magistrate Judge Patricia Sullivan issued Findings and Recommendation in which she recommended the Court grant Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiff is barred by the Eleventh Amendment from bringing an action against DHS for damages in federal court.

On February 21, 2013, this Court adopted the Findings and Recommendation and granted Defendant's Motion to Dismiss Plaintiff's Complaint as to DHS with prejudice on the ground that Plaintiff's claims against the DHS are barred by the Eleventh Amendment.  The Court, however, noted Plaintiff also named the State's "agents" as Defendants even though he did not serve them.  Because the Court was unable to determine from the record whether Plaintiff had any basis to proceed against individual defendant(s) and because Plaintiff was appearing *pro se,* the Court granted Plaintiff leave to file an amended complaint against named individual defendants "as long as Plaintiff is able to plead sufficient facts to show there is a legitimate federal constitutional claim to pursue against such individuals."  The Court also advised Plaintiff as to the requirements for properly pleading a claim against individual defendants under 42 U.S.C. § 1983.

On March 13, 2013, Plaintiff filed a First Amended Complaint containing the same factual allegations as his initial Complaint

and asserting claims against Warner, Turner, Loughary, Hobbs, Frost, and Hinton for violation of Plaintiff's rights under the Fifth and Ninth Amendments to the United States Constitution.

On May 17, 2013, Defendants filed a Motion to Dismiss. The Court took Defendants' Motion under advisement on June 4, 2013.

## STANDARDS

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic v. Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Intri-Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1050 n.2 (9th Cir. 2007).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits

8 - OPINION AND ORDER

attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citing *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)). A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006)).

A *pro se* plaintiff's complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Thus, the court must construe *pro se* filings liberally. If a plaintiff fails to state a claim, "[l]eave to amend should be granted unless the pleading 'could not possibly be cured by the allegation of other facts,' and should be granted more liberally to *pro se* plaintiffs." *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003)(quoting *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000)).

## DISCUSSION

Defendants move to dismiss Plaintiff's First Amended Complaint on the grounds that Plaintiff's claims are barred by the applicable statute of limitations and that Plaintiff fails to

9 - OPINION AND ORDER

state a claim.

## I.   Plaintiff's claims are untimely

The Ninth Circuit has made clear that the statute of limitations for § 1983 actions is determined by state law. See *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009). Section 1983 actions are characterized as personal-injury actions for statute-of-limitations purposes. *Id.* Under Oregon law the statute of limitations period for general tort actions is two years. Or. Rev. Stat. § 12.110(1). Accordingly, the limitations period for § 1983 actions in Oregon is two years.

The Ninth Circuit has also made clear that even though state law determines the limitations period for § 1983 actions, federal law governs as to when a § 1983 claim begins to accrue. *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the cause of action." *Id.*

### A.   Plaintiff's Fifth Amendment claim

Plaintiff states in his Response to Defendants' Motion to Dismiss that his claim for violation of the Fifth Amendment arises from the fact that "Defendants held [Plaintiff] to answer and found him, guilty [through a] 'disposition of founded' for abuse/exploitation without presentment and/or indictment of a Grand Jury." Pl.'s Resp. at 5. Plaintiff alleges in his First

10 - OPINION AND ORDER

Amended Complaint that as of August 26, 2009, he knew about the "disposition of founded" that forms the basis for his Fifth Amendment claim. Plaintiff's cause of action, therefore, began to accrue on August 26, 2009. Plaintiff, however, did not file this action until September 7, 2012, which is more than two years after Plaintiff's Fifth Amendment claim accrued.

The Court, therefore, concludes Plaintiff's claim for violation of the Fifth Amendment is untimely. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Fifth Amendment claim on that basis.

### B. Plaintiff's Ninth Amendment claim

Plaintiff states in his Response that his claim for violation of the Ninth Amendment arises from the fact that Defendants determined in their "disposition of founded" that Plaintiff was "guilty" of abuse and/or exploitation of his children "outside a court of law and labeled him as a sex offender that would need to attend treatment." Am. Compl. at 3.

As noted, Plaintiff alleges in his First Amended Complaint that he knew as of August 26, 2009, about the "disposition of founded" that forms the basis for his Ninth Amendment claim. Plaintiff's cause of action, therefore, began to accrue on August 26, 2009. Plaintiff, however, did not file this action until September 7, 2012, which is more than two years after Plaintiff's Ninth Amendment claim accrued.

11 - OPINION AND ORDER

The Court, therefore, concludes Plaintiff's claim for violation of his rights under the Ninth Amendment is untimely. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Ninth Amendment claim on this basis.

## II. Plaintiff has failed to state a claim

Defendants assert even if Plaintiff's claims were not time-barred, Plaintiff has failed to state a claim for violation of either his Fifth or Ninth Amendment rights.

### A. Plaintiff's Fifth Amendment claim

Plaintiff alleges his Fifth Amendment claim arises from Defendant's "convic[tion]" of Plaintiff for sexual abuse and/or exploitation of his children "outside a court of law" (i.e., without presentment or indictment by a grand jury). The Supreme Court, however, has held the "Due Process Clause [of the Fifth Amendment] is not implicated [by an administrative investigation and finding] because an administrative investigation adjudicates no legal rights . . . and . . . does not come into play until the initiation of criminal proceedings." *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984). *See also Pena v. Palmer-Ramirez*, No. C 99-3780CRB(PR), 2001 WL 902561, at *3 (N.D. Cal. July 27, 2001)("a State may, consistent with due process, dispense with the preliminary hearing procedure in initiating criminal proceedings against the accused.")(citing *Lem Woon v. Or.*, 229 U.S. 586, 590 (1913)). Defendants' determination that the

12 - OPINION AND ORDER

sexual-abuse complaint against Plaintiff was "founded," therefore, does not implicate the Fifth Amendment or create any right to an indictment or grand jury.

Plaintiff also recites a number of state administrative rules in support of his Fifth Amendment claim. The rules cited by Plaintiff, however, do not contain any private right of action, and Plaintiff does not indicate the way in which alleged violations of those administrative rules constitutes a violation of his Fifth Amendment rights.

Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Fifth Amendment claim on this basis.

### B.    Plaintiff's Ninth Amendment claim

Plaintiff asserts in his Response that the "right to raise one's own children" is a right that is "not included in the United States Constitution," but it may be asserted via the Ninth Amendment. The Ninth Circuit has repeatedly held "the Ninth Amendment "has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation." *Schowengerdt v. United States,* 944 F.2d 483, 490 (9th Cir. 1991). *See also Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986)("[T]he ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim. The Supreme Court has repeatedly voiced concern that a section 1983 claim be based

13 - OPINION AND ORDER

on a specific constitutional guarantee. The district court properly dismissed the [plaintiffs'] claim based on the penumbras of the ninth amendment.")(quotations omitted)); *Estate of Mohammed ex rel. Wideman v. City of Morgan Hill*, No. 5:10-cv-05630 EJD, 2012 WL 2150309, at *6 (N.D. Cal. June 12, 2012) ("Plaintiffs are unable to rely on the Ninth Amendment because that amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim.").

The Court, therefore, grants Defendants' Motion to Dismiss Plaintiff's Ninth Amendment claim on this basis.

### III. Amendment of Plaintiff's First Amended Complaint

As noted, Plaintiff is proceeding *pro se*. Generally when a *pro se* plaintiff fails to state a claim, "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to *pro se* plaintiffs." *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003). Plaintiff has already been given leave to amend his Complaint once to cure the defects set out in the Magistrate Judge's January 1, 2013, Findings and Recommendation and adopted in the Court's February 21, 2013, Order. In his First Amended Complaint, however, Plaintiff failed to cure the defects of his original Complaint. The Court, therefore, declines to grant Plaintiff leave to amend a second time.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#25) to Dismiss and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 21st day of August, 2013.

                                                          /s/ Anna J. Brown
                                                          ANNA J. BROWN
                                                          United States District Judge